**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JASON MARTINEZ,

      Claimant,

v.                                                  Civ. No. 14-451 RB/SCY

CAROLYN W. COLVIN,
*Commissioner of the*
*Social Security Administration*,

      Defendant.

**<u>REPORT AND RECOMMENDATIONS</u>**

     This matter is before me on Claimant's Motion to Reverse and Remand the Social Security Administration (SSA) Commissioner's decision to deny Claimant disability insurance benefits. *Doc. 20.* For the reasons discussed below, I recommend that the Court grant Claimant's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

I.    <u>B</u><u>ACKGROUND</u>

    A.  **<u>Claimant's medical history</u>**

     Claimant Jason Martinez is a thirty six year old man who suffers from back pain and a mood disorder.

     On July 28, 2004, Claimant was working as a Nurse Aid at Miners' Colfax Medical Center when he fell on the job and injured his back. AR 355. Throughout the rest of 2004 and up to October 2005, he received treatment for his injury from Dr. Michelle Duran, Dr. Shields and Thomas C. Engel, a pain consultant.  AR 356-57. In October 2005, Dr. Shields determined that

Claimant had a "permanent partial impairment of 10% of the whole person." AR 352. Because of his injury, Claimant was terminated by Miners' Colfax Medical Center. AR 356-358.

In May, 2007, Claimant sought assistance from the New Mexico Division of Vocational Rehabilitation. He was evaluated by Casilda Gallegos, a Certified Vocational Evaluator, who found that Claimant should be restricted to light, sedentary work and that he could likely succeed in a variety of career paths. AR 349. The first psychological assessment in his medical record was performed by Dr. Mark Acuri, Ph.D. on January 12, 2008.  AR 332.  Dr. Acuri found that Claimant's mental status was "normal", but that Claimant's test results indicated verbal processing problems and that Claimant's "propensity for verbal tasks" was well below that of his peers. AR 336-338. Dr. Acuri found that Claimant "seem[ed] to be. . .able to function in a variety of settings and with a variety of types of people." AR 339.  Claimant reported having a pre-existing back condition from slipping on a floor while working at a hospital, as well as a history of depression.  AR 333-36.  Dr. Acuri assigned Claimant a Global Assessment of Function ("GAF") score of 65. AR 343.

In December 2008, Claimant filled out a New Mexico Division of Vocational Rehabilitation Health Assessment Questionnaire in which, in addition to his back issues, he described himself as having a variety of mobility and cognitive impairments, including remembering simple instructions, maintaining regular attendance, and managing his anger effectively. AR 360-361.

Dr. Gilbert Aragon treated Claimant for a variety of issues, beginning on January 11, 2008 and continuing until April 2010.  During that time, Claimant received treatment for his ongoing back pain, as well as depression and carpal tunnel syndrome in his left wrist. AR 372-

2

379. On September 7, 2010, Claimant was treated by Dr. Lee Caruana for his ongoing back pain. AR 371. Dr. Caruana observed that Claimant could only make very poor eye contact. *Id.*

In October 20, 2010, Claimant's mental status was evaluated by Dr. Richard Madsen for the New Mexico Disability Determination Service. AR 384. Dr. Madsen found that Claimant was depressed and in chronic pain, and his "ability to do work-related activities is impaired. He will have difficulty maintaining a regular work schedule, focusing on concentrating on work, relating to peers, co-workers, supervisors, and the general public." AR 387-388. On October 22, 2010, Dr. Sarah Berke, a radiologist, evaluated Claimant's back, finding that he had "chronic discogenic degenerative disease with secondary degenerative changes." AR 392. On October 27, 2010, Dr. Martin Trujillo conducted a disability determination examination. AR 395. He found that Claimant had an 80% range of motion, but he reported significant pain. Dr. Trujillo observed that while Claimant did have chronic lower back pain "there is a poor correlation between his symptoms and the minimal pathological findings of the MRI" and that Claimant seemed capable of performing moderate duty work including lifting up to 50 pounds. AR 396-97.

Claimant's Physical Residual Functional Capacity Assessment, performed on November 4, 2010, observed that Claimant's "subjective limits appear to be disproportionate to objective findings" and that Claimant did not have any significant exertional limitations. AR 399, 403.  His November 12, 2010 Mental Residual Functional Capacity Assessment found, based on Claimant's medical records, moderate limitations in the following areas: remembering and carrying out detailed instructions, maintaining concentration for long periods of time, maintaining a routine unsupervised, and interacting appropriately with co-workers, supervisors, and the general public. AR 406-407. Dr. Scott Walker, who conducted the Mental Assessment, concluded that although Claimant had a mood disorder, he could "understand, remember, and

carry out detailed, but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR 408, 413. Drs. Charles Mellon and Lawrence Kuo, upon reconsideration of the physical and mental assessments, affirmed them. AR 430-31.

Dr. Margaret Connolly, a psychiatrist, treated Claimant on July 11, 2012 and on October 15, 2012, for mental health issues, finding that he had depression, post-traumatic stress disorder ("PTSD") and anxiety. AR 270, 275, 296-297.  On November 7, 2012, Dr. Connolly provided a Medical Assessment of Ability to Work-Related Activities (Mental) in which she found that Claimant had marked[1] difficulties in the following areas:

- remembering detailed instructions, locations, and work-like procedures;

- carrying out detailed instructions;

- receiving instructions or criticism from supervisors;

- maintaining attention and concentration for 2+ hour segments or working with or near co-workers;

- responding appropriately to changes in the workplace;

- performing activities on a schedule, keeping a consistent weekly schedule without psychological interruptions;

- interacting appropriately with the general public or co-workers; and

- making simple work decisions.

AR 293-294. On a separate Assessment of Adaptation to Temperament Characteristics Required by Jobs, Dr. Connolly found that Claimant should avoid stressful jobs, jobs with a variety of

---

[1] On the form, "marked" is defined as "a severe limitation which **precludes** the individual's ability to usefully perform the designated activity on a regular and sustained basis, i.e., 8 hours day, 5 days a week, or an equivalent schedule. The individual cannot be expected to function indecently [*sic*], appropriately, and effectively on a regular and sustained basis." AR 294.

duties, jobs that were isolated, jobs that required specific instructions or judgment making to perform, and jobs where the Claimant directed or controlled others.  AR 295.

Finally, Claimant was shot in the face by his father on October 24, 2012, resulting in several fractures and significant injury to his left eye. AR at 318, 439-440.

**Procedural history**

Claimant filed his Titles II and XVI applications for disability insurance benefits and supplemental security income in September, 2010.  AR at 20.  His claim was denied on November 18, 2010 and his request for reconsideration denied on June 6, 2011.  *Id.*  Claimant requested a hearing on June 13, 2011.  *Id.*  An in-person hearing was held on November 8, 2012. *Id.*  The ALJ issued her decision on January 4, 2013 denying Claimant's request for benefits. AR at 32.

**II.**     **APPLICABLE LAW**

**A.  Disability Determination Process**

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

**B.  Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent

conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III.   ANALYSIS

Claimant contends that the ALJ's residual functional capacity ("RFC") determination at Step Four is not supported by substantial evidence because (1) she did not properly consider Dr. Connolly's, Dr. Madsen's, or Dr. Walker's opinions; (2) she did not accord any weight to Claimant's uncle's or mother's testimony about his abilities; and (3) she declined to rule on Claimant's objections to the inclusion of Dr. Trujillo's report, and then considered his report in her determination. He also contends that the vocational expert's ("VE") testimony was unreliable. Because I find that the ALJ failed to properly consider Dr. Connolly's opinion, I recommend that the Court **GRANT** Claimant's Motion. Further, because I find that the ALJ erred with regard to Dr. Connolly, I will not consider Claimant's other contentions.

A.    __The  ALJ failed to properly consider Dr. Connolly's Opinion__

Claimant raises two objections to the ALJ's consideration of Dr. Connolly's opinion. First, Claimant contends that the ALJ erred by not calling Dr. Connolly a treating physician. Second, he contends that regardless of whether the ALJ ultimately gave Dr. Connolly's opinion controlling weight, the ALJ still failed to properly incorporate Dr. Connolly's opinion into the RFC.

The ALJ is required to evaluate every medical opinion in the Claimant's record, and weigh each opinion in light of the relationship between Claimant and that medical professional. 20 C.F.R. § 404.1527(c); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  Further, when rejecting a medical opinion, the ALJ must provide specific, legitimate reasons for doing so. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

            i.      *The ALJ did not err in not giving controlling weight to Dr. Connolly's opinion*

There is no dispute that Dr. Connolly, a psychiatrist, is an acceptable medical source. 20 C.F.R. § 404.1513(a); *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).  But the parties disagree as to whether Dr. Connolly should be considered a "treating" physician based on the length of her treatment relationship with Claimant. *See* 20 C.F.R. § 416.927(d)(2)(i),(ii). Dr. Connolly saw Claimant twice, in July and October 2012.  AR 270, 275, 296-297. Claimant contends this is sufficient to count Dr. Connolly as a treating physician, while the Commissioner, relying on *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003), asserts that it is not.

The Court agrees with the Commissioner that Dr. Connolly is not a treating physician. In *Doyal*, the physician at issue saw the claimant twice in seven years. In discussing the nature of a treating physician versus a non-treating physician, the Court explained that "the treating physician's opinion is given particular weight because of his unique perspective to the medical

8

evidence . . . [which] requires a relationship of both duration and frequency." 331 F.3d at 762. Therefore, the Court found that "[a] physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source." *Id.* at 763. Here, Claimant's relationship with Dr. Connolly is not sufficiently lengthy or frequent to support his contention that she is his treating physician. *See, e.g.*, *McTaggart v. Astrue*, 342 F. App'x 373 (10th Cir. 2009)(physicians who had seen the claimant three times over a three month period and "a few" occasions in a month long period, respectively, were not treating physicians.) Dr. Connolly's opinion is therefore not entitled to controlling weight. *Lauxman v. Astrue*, 321 F. App'x 766, 770 (10th Cir. 2009).

       ii.     *The ALJ failed to explain why she rejected Dr. Connolly's opinion*

Although Dr. Connolly is not a treating physician, the ALJ was still required to consider her opinion when making her RFC findings. 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96–5P, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored.") "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, at *7.

Claimant contends that the ALJ erred by ignoring, without explanation, certain the marked limitations set forth in Dr. Connolly's assessment of Claimant, particularly in light of the fact that Dr. Madsen, a psychologist, had identified some of the same marked limitations. The Commissioner responds that because her assessments are essentially summarized in a check box form with no narrative accompaniment, the ALJ cannot be faulted for not taking them into consideration.

As is relevant here, the ALJ found that "Claimant can make simple work related decisions with few workplace changes. He can have only occasional contact with the general public, and would not be able to perform work that requires a production pace." AR 25. The ALJ did discuss Dr. Connolly's findings, stating that she gave her opinion "some weight" but noting that the record showed that Claimant could make simple decisions with no public contact and that Dr. Connolly's opinion was "basically consistent" with that conclusion. AR 29.

At the outset, I reject the Commissioner's contention that the ALJ was entitled to completely ignore Dr. Connolly's opinion because it was partially articulated in the form of a check box. The Tenth Circuit case on which the Commissioner relies, *Sullivan v. Colvin*, specifically addresses agency medical consultant assessments, *not* the opinions of physicians who have actually treated the claimant at issue. 519 F. App'x 985, 989 (10th Cir. 2013);  POMS DI 24510.060, *available at* https://secure.ssa.gov/poms.nsf/lnx/0424510060. Unlike a medical consultant form, this form was indisputably filled out by a physician who was treating Claimant. It is, therefore, a medical opinion that must be considered by the ALJ. *See* SSR 96-5 p 1996 WL 374183, at *4-5 ("Medical source statements are medical opinions submitted by acceptable medical sources . . . about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. . .A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider ... when assessing an individual's RFC. . . .); 20 C.F.R. § 404.1527(a)(2)(stating that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your ... mental restrictions.")

Having determined that Dr. Connolly's opinion consists of all her records, I must then consider whether the ALJ properly considered her opinion, and I find that she did not. Dr. Connolly found that Claimant had **marked** limitations in areas that the ALJ wholly failed to discuss in the RFC, such as his ability to complete a normal work day or week without interruption, and maintain attention and concentration for extended periods of time, his ability to accept instruction, and his ability to get along with coworkers. AR 293-294. Dr. Connolly's findings, moreover, are not consistent with other findings in the record, such as that of Dr. Acuri, who found that Claimant "seem[ed] to be. . .able to function in a variety of settings and with a variety of types of people", and Dr. Walker, who found that Claimant was able to concentrate for more than two hours at a time and interact appropriately with supervisors. AR 339, 408, 413. Yet the ALJ fails to explain how she reconciled these inconsistencies in the record, which is an error necessitating remand. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]hen ... an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination."). While, the ALJ may ultimately reject Dr. Connolly's opinion and reach the same conclusion, more analysis of Dr. Connolly's opinion is required.  In light of the forgoing, I recommend that the Court GRANT Claimant's Motion.

## IV.   CONCLUSION

Claimant has demonstrated that the ALJ failed to properly consider Dr. Connolly's medical opinion at Step Four of the sequential analysis, and the ALJ's error is not harmless.  I

therefore recommend that Court reverse the Commissioner's decision denying Claimant benefits

and remand this action to the Commissioner to conduct further proceedings.


/s/ Steven C. Yarbrough_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE


**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF
SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file
written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A
party must file any objections with the Clerk of the District Court within the fourteen-day
period if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be allowed.**